UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENY CANGO, | |
| Plaintiff, | Civ. No. 18-10151 (KM) (SCM) |
| v. | |
| BERGEN COUNTY JAIL ADMINISTRATOR, et al., | OPINION |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Eugeny Cango, is currently a state prisoner incarcerated at the South Woods State Prison in Bridgeton, New Jersey. At the time of the events giving rise to his *pro se* civil complaint, Mr. Cango was a pretrial detainee at the Bergen County Jail ("BCJ").

This Court must screen the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from suit. For the following reasons, the complaint will be permitted to proceed in part.

### II. BACKGROUND

The factual allegations of the complaint will be construed as true for purposes of this screening opinion. Mr. Cango names several John Does as defendants in his complaint; they are: (1) BCJ Administrator – John Doe 1; (2) BCJ Warden – John Doe 2; (3) Bergen County Sheriff's

Officers – John Does 3-12; (4) BCJ Classification Committee Members, Officials & Civil Employees – John Doe's 13-18; and BCJ Healthcare Administrator & Staff – John Does 19-22.[1]

Plaintiff states that he was a pretrial detainee lodged at the BCJ. He was detained on sexual assault charges. Upon his arrival at BCJ, Mr. Cango was placed on suicide watch. However, he was cleared to general population by the John Does from BCJ Healthcare and the John Does of the BCJ Classification Committee. Mr. Cango was then moved into a general population cellblock where he was immediately threatened with harm by other prisoners. Mr. Cango states that these threats were a result of the media coverage surrounding his sexual assault charges.

Mr. Cango informed the John Does of the Bergen County Sheriff's Officers about these threats. They gave Mr. Cango of protective custody housing or being moved to a different general population cellblock. Mr. Cango opted to try a different general population cellblock.

Upon being moved to a different cellblock, Mr. Cango was again threatened with harm by inmates for the same reason. Mr. Cango again notified John Does from the Sheriff's Office about these threats. This time, the Sheriff's Office transferred Mr. Cango to protective custody.

After this transfer, Mr. Cango suffered a psychological traumatic episode as a result of being segregated. After the John Does from BCJ Healthcare and the Classification Committee cleared him, he was transferred out of protective custody back to a general population cellblock.

Back in general population, Mr. Cango was again threated with harm by inmates. He again complained to the John Does from the Sheriff's Office. In this instance, the Sheriff's Office John Does told Mr. Cango to accept his current cellblock and deal with the threats, or else

---

[1] The complaint names the unnamed BCJ Classification Members as J. Jones 13-18, and the BCJ Healthcare Administrator and Staff as J. Smith's 19-22. For purposes of this Opinion, these unnamed defendants will be designated by John Doe for sake of clarity.

2

be prepared to receive a disciplinary charge along with an immediate transfer to the administrative segregation unit. Mr. Cango accepted his general population cellblock.

Sometime thereafter, John Does from the Sheriff's Office entered Mr. Cango's cellblock and announced to all inmates that if they harmed Mr. Cango, they would face jail misconduct and "street" charges. Within a week, Mr. Cango alleges, inmates confronted him and offered to protect him from harm if they paid them in commissary items. They stated that if Mr. Cango did not pay them, the inmates would beat and rape Mr. Cango or kill him and his family. Mr. Cango paid these inmates off as demanded.

During this time, Mr. Cango witnessed fights amongst inmates in his cellblock. Most occurred without the knowledge of the John Doe Sheriff's Officers, but the John Does intervened in some of them.

After three months of residing in the cellblock, Mr. Cango was sexually assaulted by one of the inmates. Mr. Cango was threatened with harm if he informed anyone about the assault. Mr. Cango did not report the assault at the time. Ultimately, the inmate who assaulted Mr. Cango was involved in another altercation with another inmate, was apprehended by the John Does, and transferred out of the cellblock.

After the assaulter was moved to a different cellblock, Mr. Cango disclosed the sexual assault on a nurse call medical slip. He did not want to disclose it to the Sheriff's Office John Does based on their prior responses to his complaints. A criminal investigation was initiated. Mr. Cango remained in his cellblock and continued to make the extortionate protection payments.

At one point the John Doe Sheriff's Officers displayed a magazine of scantily clad male models. Mr. Cango was asked in front of other prisoners which one he preferred.

In May 2017, Mr. Cango witnessed his cellmate beaten to the point of unconsciousness. With this as an example, Mr. Cango continued his extortion payments to the other inmates.

In September 2017, Mr. Cango was transferred to the sexual offender cellblock. According to Mr. Cango, this cellblock is designed to protect detainees accused of sexual assault from harm. He alleges that this cellblock existed at the time of his admission at BCJ, although he was not assigned to it. Upon his transfer to the sexual offender cellblock, John Does from the Sheriff's Office told Mr. Cango that if he complained again about prisoner threats, they would issue a disciplinary charge against him. Mr. Cango admits that in the sexual offender cellblock he no longer had to make extortion payments to other inmates.

In February 2018, Mr. Cango was transferred to state prison. In April 2018, the inmate who had sexually assaulted him was convicted and sentenced for his crimes against Mr. Cango.

Mr. Cango brings federal and state law claims against the John Doe defendants, seeking damages.

### III. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *see* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 Fed.Appx. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## IV. DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A. Failure to Protect

Mr. Cango first asserts a failure-to-protect claim. To state a claim against a prison official for failure to protect, "the inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)). "Deliberate indifference" is a subjective standard whereby "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). As noted by the Third Circuit:

> It is not sufficient that the official should have known of the risk. *[Beers Capitol,* 256 F.3d at] 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence."

6

> *Farmer*, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bistrian*, 696 F.3d at 367; *see also Paulino v. Burlington Cnt'y Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) (noting that state of mind requirement for prisoner claims of deliberate indifference applies to pretrial detainee claims) (citation omitted).

Plaintiff alleges that he informed certain John Doe Bergen County Sheriff's Office defendants of the threats he was facing from certain inmates. At first the John Doe defendants reassigned Mr. Cango to another cellblock, but later they refused to do so, but instead threatened him with a disciplinary charge and transfer to the administrative segregation unit. As a result, Thereafter, Mr. Cango continued to reside on the same cellblock where he faced extortion from other inmates as well as, ultimately, sexual assault by another inmate.

These allegations are sufficient to permit this failure-to-protect claim to proceed past screening against those John Doe Bergen County Sheriff's Office defendants.[2] Mr. Cango shall have ninety days from the date of this Opinion and corresponding Order to file an amended complaint that specifically names the defendants who told Mr. Cango he had to accept his cellblock assignment or else face a disciplinary charge.[3]

---

[2] This Court will also permit Mr. Cango's corresponding state law claims arising from the same allegations to proceed past screening at this early stage of the proceedings.

[3] Typically, this Court would order the Clerk to issue summons so that individual defendants may be served. Because Mr. Cango does not state any defendants' names, no summons will be issued at this time. *See, e.g., Haines v. Does*, No. 07-5395, 2008 WL 1766633, at *9 (D.N.J. Apr. 14, 2008). Mr. Cango will be given ninety days in which to file an amended complaint that names the officers associated with the claims that are being permitted to proceed as stated in this Opinion.

B. Equal Protection

Mr. Cango also asserts an equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

This Court will permit Mr. Cango's equal protection claim to proceed on a class-of-one theory against the John Doe Bergen County Sheriff's Office defendants responsible for the failure to place him in the sexual offender cellblock upon his arrival at BCJ. This claim, as construed by the court, is also asserted against the BCJ Classification Committee John Does and the John Doe members of the BCJ Healthcare Staff responsible for the failure to place Mr. Cango in the sexual offender cellblock. As with the failure-to-protect claim, Mr. Cango he shall be given ninety days in which to file an amended complaint that expressly names the individual defendants responsible for not placing him in the sexual offender cellblock.

8

C. BCJ Administrator & Warden

The complaint also attempts to bring claims against the BCJ Administrator and the BCJ Warden. As this Court has noted:

> [A] § 1983 plaintiff cannot rely solely on a *respondeat superior* theory. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*"). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).
>
> With respect to supervisors, the United States Court of Appeals for the Third Circuit has
>
>> recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiffs rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).
>
> *Parkell v. Danberg*, No. 14–1667, 2016 WL 4375620, at *9 (3d Cir. Aug. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

*Davis v. Yates*, No. 15-6943, 2016 WL 5508809, at *7 (D.N.J. Sept. 27, 2016).

The complaint fails to sufficiently allege claims against the Administrator and the Warden under either supervisory liability theory. Accordingly, this Court will dismiss Mr. Cango's federal claims against the John Doe Administrator and Warden without prejudice for failure to state a claim upon which relief may be granted. Furthermore, this Court will decline to

exercise supplemental jurisdiction over Mr. Cango's state law claims against these two John Doe supervisory defendants. *See T.R. v, Cnty. of Delaware*, No. 13–2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable federal claims against that defendant, despite the fact that plaintiff may have pled plausible claims against another defendant) (citations omitted); *see also Nadal v. Christie*, No. 13–5447, 2014 WL 2812164. at *8 (D.N.J. June 23, 2014).

V. **CONCLUSION**

For the reasons expressed in this Opinion, Mr. Cango's federal claims against the John Doe BCJ Administrator and the BCJ Warden are dismissed without prejudice for failure to state a claim. This Court declines to exercise supplemental jurisdiction over Mr. Cango's state law claims against John Doe BCJ Administrator and the BCJ Warden. Mr. Cango's claims against the remaining defendants shall be permitted to proceed. Mr. Cango shall have ninety days from the date of this Opinion and corresponding Order to file an amended complaint that expressly names these individual John Does so that service can be effectuated. An appropriate Order will be entered reflecting those rulings and authorizing submission to the court of a proposed subpoena for the purpose of identifying the John Doe defendants.

DATED: March 15, 2019

KEVIN MCNULTY
United States District Judge