NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVELISSE CLAUSELL, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON SERVICES, INC., <br><br> Defendant. | Civil Action No. 25-1751 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Johnson & Johnson Services, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 8) Plaintiff Ivelisse Clausell's ("Plaintiff") Amended Complaint (ECF No. 4) and Defendant's Motion for Sanctions (ECF No. 15). Plaintiff opposed both motions (ECF Nos. 16, 20), and Defendant replied (ECF Nos. 17, 21). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants in part and denies in part Defendant's Motion to Dismiss and denies Defendant's Motion for Sanctions.

I.  **BACKGROUND**[1]

    A.  **Factual Background**

This matter involves an employment discrimination dispute between Plaintiff and Defendant that stems from Plaintiff's allegations that she was discriminated against when she was passed over for a promotion, and that Defendant retaliated against her after she filed a complaint

---

[1] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

with Human Resources ("HR") alleging conduct that she believed violated the law. (Compl. ¶¶ 2-3, 28, ECF No. 4.) Plaintiff's employment with Defendant began in April 2016 when she joined as Senior Counsel, Privacy Law. (*Id.* ¶ 5.) Most recently, Plaintiff worked as Vice President of Data Protection Legal ("DPL") within Defendant's Global Legal Organization ("GLO") and Global Privacy Organization ("GPO"). (*Id.*) During the course of her employment, Plaintiff performed her job well and earned a reputation as a subject matter expert and trusted business partner in privacy. (*Id.* ¶ 16.) Plaintiff left the company in December 2019 and returned in January 2022 as Group Leader, Global Privacy & Cybersecurity Law. (*Id.* ¶ 5.)

Plaintiff alleges that Defendant subsequently denied her a promotion to Chief Privacy Officer ("CPO") based on her ethnicity, race, and gender by pre-selecting an external candidate and failing to provide Plaintiff an opportunity to present her qualifications through the interview process. (*Id.* ¶ 29.) The hiring manager was Ashley Watson ("Watson"), a woman who is white and the Worldwide Vice President and General Counsel of MedTech Legal and Head of Enterprise Privacy. (*Id.* ¶ 31.) Watson announced she was looking for three things in a successful candidate for the CPO role: "(1) someone who was a privacy expert; (2) someone who had done the job before; and (3) someone who was 'delightful.'" (*Id.* ¶ 32.)

Plaintiff's qualifications included that: (1) she practiced privacy law for more than fifteen years, had been frequently asked to speak on privacy topics, and had numerous certifications in the privacy area; (2) she had previously worked as CPO at Organon, Global Head of Privacy and Information Security at Esperion Therapeutics, and Senior Compliance Counsel and Privacy Officer at Otsuka Pharmaceutical; and (3) she had received a rating of "exceeds" in the "behaviors" section of her then most recent performance evaluation and was praised by Defendant in a release

announcing her appointment to Group Leader as an "extremely collaborative" employee. (*Id.* ¶ 34.)

Throughout July 2023, Defendant conducted "a farcical interview process" to fill the position, but the team already knew it would hire Scott Taylor ("Taylor"), a white male external applicant, for the role (*Id.* ¶¶ 35, 37.) Specifically, on July 5, 2023, Watson interviewed Plaintiff. (*Id.* ¶ 38.) During the interview, Watson stated her preference for Taylor. (*Id.* ¶ 38.) Plaintiff attended two additional interviews on July 10, 2023: (1) one with the Worldwide Vice President of Regulatory Law; and (2) another with Denise Weber ("Weber") head of HR, Legal and Government Affairs. (*Id.* ¶ 39.) During the interview, Weber "acknowledged that . . . Watson had previously informed her that she had a 'preferred candidate.'" (*Id.*) Taylor was hired and started as CPO on August 10, 2023. (*Id.* ¶ 41.)

After Taylor's hire, he engaged in allegedly unethical practices that Plaintiff believes violated the law, including the New Jersey Trade Secrets Act and the Defend Trade Secrets Act. (*Id.* ¶ 43.) Plaintiff became concerned that Taylor was misappropriating trade secrets from his former employer, Merck & Co. ("Merck"), where Plaintiff had also previously worked. (*Id.* ¶ 44.) Specifically, Plaintiff was concerned that Taylor was improperly using confidential information and documents belonging to Merck to complete his work for Defendant, including copying and pasting confidential work product and information from Merck-branded documents into documents and presentations for Defendant. (*Id.*) Taylor also "admitted to [Plaintiff] during a [one on one] meeting that he had 'the whole Privacy Rulebook' from Merck." (*Id.* ¶ 46.) Taylor continues to use Merck's property in his work for Defendant. (*Id.*)

Taylor, thereafter, hired Raymond Farraro ("Farraro"), another white male, and his previous employee at both Merck and Hewlett-Packard, for the position of Senior Director, Global

3

Privacy Governance and Assurance. (*Id.* ¶ 47, 48.) Since beginning his employment with Defendant, Farraro has converted several Merck documents to Defendant's branding by changing the font colors. (*Id.* ¶ 49.) Farraro has also stated several times that some of the documents may have "Merck words" or that he may have forgotten to put something into Defendant's format and instructed other employees to change the Merck references to references about Defendant. (*Id.*) Plaintiff alleges this conduct "implicated [Defendant] in violating several intellectual property laws." (*Id.*)

On May 17, 2024, Plaintiff filed an official report with Weber from HR, after speaking to Weber about her concerns on May 14, 2024. (*Id.* ¶ 52.) In the report, Plaintiff reported that Taylor and Farraro had brought proprietary documents with them from Merck. (*Id.*) Plaintiff filed the report to ensure Defendant's compliance with intellectual property laws and ethical practices. (*Id.*) Weber, however, "strategically delayed the submission of [Plaintiff's report], and . . . on June 19, 2024, . . . informed [Plaintiff] that she had filed the [report] 'anonymously,' although" they had "previously agreed . . . that the complaint would be filed in [Plaintiff's] name." (*Id.* ¶ 54.) After May 2024, Plaintiff "provided additional information to support her [report] to . . . Weber and . . . Kerri Loiselle" ("Loiselle"), "Senior Manager, Employee & Labor Relations, who was eventually assigned to investigate the . . . complaint." (*Id.* ¶ 55.) Loiselle contacted Plaintiff on July 9, 2024. (*Id.*)

Six weeks after Plaintiff filed her report, Plaintiff had her mid-year performance review with Taylor and Watson. (*Id.* ¶ 57.) During the meeting, Watson and Taylor stated that Defendant was reorganizing, and that Plaintiff's role would be eliminated as part of the reorganization. (*Id.* ¶ 62.) Plaintiff alleges that this was done in retaliation for filing her complaint. (*Id.* ¶ 63.) On September 26, 2024, Watson and Weber met with Plaintiff for a "[ninety]-day . . . discussion under

4

the New Jersey WARN Act" informing Plaintiff that her termination date was December 27, 2024. (*Id.* ¶ 64.) Plaintiff's annual bonus was also cut by fifty percent without explanation. (*Id.* ¶ 68.)

On September 30, 2024, Loiselle discussed the results of her investigation into Plaintiff's complaint and confirmed that she found that Merck materials were used but that Defendant determined their usage was not improper. (*Id.* ¶ 65.)

B.  **Procedural Background**

Plaintiff initially filed her Complaint on March 10, 2025. (Compl., ECF No. 1.) Plaintiff, thereafter, filed the operative Amended Complaint asserting five claims: (1) race and ethnicity discrimination in violation of 42 U.S.C. § 1981 ("First Claim for Relief"); (2) race discrimination in violation of the New Jersey Law Against Discrimination (the "NJLAD") ("Second Claim for Relief"); (3) gender discrimination in violation of the NJLAD ("Fifth Claim for Relief");[2] (4) whistleblower retaliation in violation of the New Jersey Conscientious Employer Protection Act (the "NJ CEPA") ("Sixth Claim for Relief"); and (5) whistleblower retaliation pursuant to the *Pierce* Doctrine ("Seventh Claim for Relief"). (Am. Compl. ¶¶ 70-108.)

Defendant filed the instant Motion to Dismiss on June 23, 2025. (Def.'s Mot. to Dismiss, ECF No. 8.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 16), and Defendant replied (Def.'s Reply Br., ECF No. 17). Defendant subsequently filed the instant Motion for Sanctions on July 14, 2025. (Def.'s Mot. for Sanctions, ECF No. 15.) Plaintiff opposed (Pl.'s Opp'n to Sanctions Br., ECF No. 20) and Defendant replied (Def.'s Reply to Sanctions Br., ECF No. 21).

---

[2] The Court notes that the causes of action in the Amended Complaint are not numbered sequentially. (*See* Am. Compl.) For clarity, the Court uses the numbers in the Amended Complaint listed as "Claims for Relief" when referring to Plaintiff's claims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

6

## III. DISCUSSION

Defendant makes three arguments in support of dismissing the Amended Complaint: (1) Plaintiff has failed to adequately plead that she was passed over for a promotion by a less qualified white man; (2) Plaintiff has failed to adequately plead that she was held to a heightened standard or terminated for a discriminatory reason; and (3) Plaintiff has failed to adequately allege a whistleblower retaliation claim pursuant to NJ CEPA or the *Pierce* Doctrine. (Def.'s Moving Br. 13-29, ECF No. 8-1.) The Court addresses each argument in turn.

### A.     Discrimination Claims (First, Second, and Fifth Claims for Relief)

Plaintiff's First (Section 1981: race and ethnicity discrimination), Second (NJLAD: race and ethnicity discrimination), and Third (NJLAD: gender discrimination) Claims for Relief are disparate treatment claims premised on Defendant's failure to promote Plaintiff and Defendant subjecting Plaintiff to a heightened performance standard. (*See* Am. Compl. ¶¶ 72, 79, 86.) The Court addresses the failure to promote theories first.

Defendant argues that the Court should dismiss Plaintiff's failure to promote claims because Plaintiff failed to sufficiently allege that Defendant hired Taylor instead of her for discriminatory reasons. (Def.'s Moving Br. 14-20.) Defendant further contends that Plaintiff alleges no facts regarding Taylor's qualifications and how they compare to Plaintiff's and thus fails to state a claim. (*Id.* at 7-9.)

When bringing an employment discrimination claim under Section 1981, a plaintiff must adequately allege a prima facie case of discrimination at the pleading stage under the *McDonnell Douglas* burden-shifting framework. *See Smith v. Phila. Works Inc.*, No. 22-1458, 2022 WL 16553381, at *3 (E.D. Pa. Oct. 31, 2022). New Jersey courts, moreover, have adopted the *McDonnell Douglas* burden-shifting framework for disparate treatment claims pursuant to the

7

NJLAD. *See Fidan v. Marba Prod., LLC*, No. 24-9788, 2025 WL 2526263, at *9 (D.N.J. Sep. 3, 2025) (quoting *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002)); *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 630 (D.N.J. 2014). The Court, accordingly, analyzes Plaintiff's discrimination claims together.

"Disparate treatment is demonstrated when a member of 'a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion.'" *Maddox*, 50 F. Supp. 3d at 630 (quoting *Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 956 (N.J. Super. Ct. App. Div. 2004)). Under the *McDonnell Douglas* framework, to state a claim for race, ethnicity, or gender discrimination, a plaintiff must adequately allege that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To state a disparate treatment claim under a failure to promote theory pursuant to Section 1981 and the NJLAD, a plaintiff must plead sufficient facts to allege: "(1) that [s]he is a member of a class protected by the anti-discrimination law[s]; (2) that [s]he was qualified for the position or rank sought; (3) that [s]he was denied promotion . . . ; and (4) that others with similar or lesser qualifications achieved the rank or position." *Dzibela v. BlackRock Inc.*, No. 23-2093, 2024 WL 4349813, at *8 (D.N.J. Sep. 30, 2024) (NJLAD elements) (citation modified) (citing *Dixon v. Rutgers, The State Univ. of N.J.*, 541 A.2d 1046, 1051 (N.J. 1988)); *see also Smith*, 2022 WL 16553381, at *3 (§ 1981 elements) (explaining that a plaintiff must allege that she: "(1) belongs to a protected category; (2) applied for and was qualified for a job in an available position; (3) was rejected; and (4) after rejection, the position stayed open and the employer

8

continued to seek applications from similarly qualified individuals[]" and noting "the flexibility of the *McDonnell Douglas* test and applying it where a position did not remain open but instead was filled when someone else was chosen over the plaintiff" (first quoting *Bray v. Marriott Hotels*, 110 F.3d 986, 990, 990 n.5 (3d Cir. 1997))).

The Third Circuit has, in turn, found that an inference of intentional discrimination is established when a plaintiff can show that "the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably." *LeCadre v. Att'y Gen. Pa.*, No. 23-2898, 2024 WL 2763829, at *2 (3d Cir. May 30, 2024) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999)); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("The 'central focus' of the prima facie case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'").

Importantly, however, "[t]he Supreme Court has held that in employment discrimination cases, a plaintiff is not required to establish a *prima facie* case at the pleadings stage." *Kelly v. HD Supply Holdings, Inc.*, No. 14-372, 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014). "Instead, [a] plaintiff's claim must be facially plausible and give fair notice to the defendants of the basis of the claim." *Id.* at *4 (citing *Huggard v. Crown Bank*, No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb.17, 2012)). "Stating a claim requires a complaint with enough factual matter (taken as true) to suggest the *required* element[.] The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the *necessary* element." *Id.* (emphases in original) (citation modified) (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008)).

Here, Plaintiff has sufficiently stated a disparate treatment claim under a failure to promote theory. *First*, Plaintiff adequately alleges, and it is not disputed that, she is a member of a protected

9

class. *See Hills v. County of Lehigh*, No. 20-3089, 2021 WL 651040, at *3 (E.D. Pa. Feb. 19, 2021). Plaintiff specifically pleads that she is both "female" and "Latina[,]" which are protected classes. (Am. Compl. ¶ 16); *see Fuller v. Glob. Custom Decorating*, No. 04-285, 2007 WL 44507, at *15 (W.D. Pa. Jan. 5, 2007) ("The [p]laintiff is clearly a member of a protected class in being a female."); *Marte v. Oliver*, No. 20-252, 2020 WL 6544978, at *4 (M.D. Pa. Nov. 6, 2020) (noting that "Latin[as] . . . [are] members of a protected class" (quoting *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002))).

*Second*, Plaintiff adequately alleges that she was qualified for the position. *See Mundy v. City of Pittsburgh*, No. 22-31, 2022 WL 17851629, at *11 (W.D. Pa. Dec. 22, 2022). Plaintiff alleges that Defendant was seeking someone who: (1) was a privacy expert; (2) had done the job before; and (3) was "delightful" for the CPO position. (Am. Compl. ¶ 33.) Plaintiff specifically alleges that she was qualified for the job because she: (1) had practiced privacy law for more than fifteen years, had frequently been asked to speak on privacy topics, and had numerous certifications in privacy; (2) had been the CPO of Organon, the Global Head of Privacy and Information Security at Esperion Therapeutics, and Senior Compliance Counsel and Privacy Officer at Otsuka Pharmaceutical; and (3) had received a rating of "[e]xeeds" in the "[b]ehaviors section of her most recent performance evaluation and was praised by Defendant for her reputation as an "'extremely collaborative'" employee in the announcement of her appointment as Group Leader. (*Id.* ¶ 34.) These facts, taken as true, sufficiently allege that Plaintiff met the qualification requirements for the CPO position. *See Mundy*, 2022 WL 17851629, at *11.

*Third*, Plaintiff adequately alleges, and it is not disputed, that she was denied the promotion. (Am. Compl. ¶ 40 ("On July 21, 2023, . . . Watson informed [Plaintiff] that she was hiring . . . Taylor for the role."); *see also* Def.'s Moving Br. 6 (explaining that Plaintiff's discrimination

claims rest on "Taylor being hired for th[e] position instead of" Plaintiff).) *Fourth*, Plaintiff specifically alleges that "Taylor . . . was the less qualified candidate." (*Id.* ¶ 43.)[4] Plaintiff, accordingly, has adequately alleged not only that she was denied the promotion, but also that Taylor—someone not of the protected class, with lesser qualifications—achieved the position. (*Id.* ¶¶ 33-35, 40, 43.) Taken together, Plaintiff's Amended Complaint, at minimum, gives rise to an inference that Plaintiff was denied the CPO promotion for discriminatory reasons. *See LeCadre*, 2024 WL 2763829, at *2.

Plaintiff, moreover, need not specifically plead what the successful candidate's qualifications were at this stage. Rather, to give rise to an inference of discrimination, Plaintiff need only plead that the candidate was similarly or less qualified. *See Dzibela*, 2024 WL 4349813, at *8 (explaining that a plaintiff must allege that someone "with similar or lesser qualifications achieved the . . . position"); *Smith*, 2022 WL 16553381, at *3 (explaining that a plaintiff must allege that the employer received applications from "similarly qualified individuals"); *Allen v. Best Foods Baking Co.*, No. 02-3663, 2003 WL 22858351, at *6 (E.D. Pa. Oct. 22, 2003) (noting, in a Title VII case, that plaintiff's allegations were sufficient where he alleged that positions "were awarded to less qualified caucasian employees"); *Jones v. E. Okla. Radiation Therapy Assocs.*,

---

[4] Defendant focuses the majority of its argument on Plaintiff's allegation that Taylor was less qualified. (Def.'s Moving Br. 7-9, 14-20; Def.'s Reply Br. 2-10.) Specifically, Defendant argues that Plaintiff's allegation is threadbare and that the Amended Complaint does not adequately allege discriminatory animus. (Def.'s Moving Br. 7-9, 14-20; Def.'s Reply Br. 2-10.) The Court disagrees. A plaintiff does not need to make out a prima facie case of discrimination at the pleading stage but a sufficient factual basis to plausibly give rise to an inference of discrimination. *Thompson v. Anthem Cos., Inc.*, No. 18-6676, 2019 WL 2591100, at *4 (D.N.J. June 7, 2019). Moreover, "a plaintiff can establish the fourth element by demonstrating that a similarly situated individual from a non-protected class was promoted instead of plaintiff." *Fitzgerald v. Nat'l R.R. Passenger Corp.*, No. 13-6979, 2016 WL 3854055, at *4 (E.D. Pa. July 13, 2016); *Pouncey v. Guilford County*, No. 18-1022, 2020 WL 1274264, at *9 (M.D.N.C. Mar. 17, 2020).

*LLC*, No. 16-150, 2017 WL 2953676, at *4 (N.D. Okla. July 10, 2017) (noting plaintiff sufficiently alleged a disparate treatment claim by alleging that she was "replaced by an individual outside of her protected class who was similarly or less qualified than her, which meets the fourth element of the prima facie case"). Defendant's argument that Taylor was, in fact, more qualified than Plaintiff raises a factual dispute that cannot be resolved on a motion to dismiss.[5] *United States v. Neary*, No. 20-14167, 2021 WL 3732910, at *15 (D.N.J. Aug. 24, 2021) (explaining that disputes of fact cannot be resolved on a motion to dismiss); *Universal Life Church Monastery Storehouse v.*

---

[5] Defendant requests that the Court take judicial notice of Taylor's qualifications and credentials and includes a declaration in support of that request. (Def.'s Moving Br. 7-8, 17-20; *see generally* Richard G. Rosenblatt Decl. in Support of Def.'s Mot. to Dismiss ("Rosenblatt Decl."), ECF No. 8-2.) The Court declines to do so because the dispute regarding Taylor's qualifications is more appropriate for consideration on a motion for summary judgment. *Stallworth v. Milan Laser Corp. LLC*, No. 25-393, 2025 WL 2637234, at *5 (E.D. Pa. Sep. 12, 2025) ("The proper place to resolve factual disputes . . . is not on a motion to dismiss, but on a motion for summary judgment." (citation modified) (internal quotations and citation omitted)). "As a general matter, [moreover,] a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)).

*McGeever*, No. 21-618, 2022 WL 214238, at *3 (W.D. Pa. Jan. 25, 2022) ("The Court cannot . . . resolve the factual dispute raised by Defendant's argument" on a motion to dismiss.).[6]

The Court, accordingly, denies Defendant's Motion to Dismiss Plaintiff's First, Second, and Fifth Claims for Relief.[7]

### B.   Retaliation Claims (Sixth and Seventh Claims for Relief)

Defendant argues that Plaintiff has failed to plead sufficient facts to support a reasonable belief on her part that the materials used by Taylor and Farraro were Merck's trade secrets or otherwise proprietary. (Def.'s Moving Br. 9-12.)

---

[6] The cases Defendant cites to support its argument that Plaintiff must allege in detail the hired candidate's qualifications, moreover, are distinguishable. *See, e.g.*, *Dzibela*, 2024 WL 4349813, at *8 (dismissing plaintiff's claims because plaintiff failed to plead: "any specific promotion he sought; when he applied for" or "was rejected for that position; whether the . . . position was filled; and if so, by whom and what that person's qualifications were"; and "any facts regarding [p]laintiff's specific qualifications"); *Khalifeh v. Duff & Phelps Corp.*, No. 16-4572, 2017 WL 1003220, at *4 (D.N.J. Mar. 15, 2017) (finding that plaintiff had not sufficiently pled a failure to promote claim because the complaint did not allege: "any specific promotion or position that [p]laintiff sought . . . [;] the requirements of any such position[;]" plaintiff's "qualifications in relation to any such position[;] the qualifications of any other employee that received a promotion instead[;] or any other facts describing the circumstances of such discrimination"); *Ayala v. N.J. Dep't of Law & Pub. Safety, Div. of State Police*, No. A-6125-09T1, 2011 WL 5041395, at *4 (N.J. Super. Ct. App. Div. Oct. 25, 2011) (affirming the trial court's grant of a motion to dismiss because the complaint was "bereft of any specifics with regard to each plaintiff's application for promotion; [plaintiff's] qualifications; the dates of the rejection; whether the sought after position was filled and, if so, by whom; and, if there was a successful candidate, the successful candidate's qualifications"). As reflected by the Amended Complaint's detailed allegations, the Amended Complaint here has no such flaw.

[7] To the extent Plaintiff relies on a disparate treatment claim based on a theory that she was held to a heightened performance standard, the Court explicitly rejects such a theory because Plaintiff has not plead any factual allegations to show that she was subjected to such a heightened performance standard. (*See generally* Am. Compl.); *see, e.g.*, *Bacon v. Merakey Phila.*, No. 21-4547, 2023 WL 5635594, at *6 (E.D. Pa. Aug. 31, 2023) (explaining that the plaintiff failed to demonstrate that other employees were treated more favorably that he was). Plaintiff, moreover, does not meaningfully argue that she stated a claim pursuant to such a theory. (*See* Pl.'s Opp'n Br. 8 (explaining that Plaintiff's assertions that "she was subjected to differential performance standards" "are not discrete claims," but are "evidence of the discriminatory environment at Defendant").)

13

### 1.   *NJ CEPA – Whistleblower Retaliation (Sixth Claim for Relief)*

Under the NJ CEPA, an employer may not take retaliatory action against an employee who "objects to, or refuses to participate in any activity, policy[,] or practice, which the employee reasonably believes . . . is incompatible with a clear mandate of public policy concerning [] public health, safety or welfare[.]" N.J. Stat. Ann. § 34:19-3(c). Carrying out this statutory mandate, the New Jersey Supreme Court has prescribed that, to state a claim under NJ CEPA, a plaintiff must adequately allege that:

> (1) [s]he reasonably believed that h[er] employer's conduct was violating a law or rule or regulation promulgated pursuant to law[;] (2) [s]he objected to the conduct[;] (3) an adverse employment action was taken against h[er]; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007) (citing *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)).

Here, Plaintiff adequately alleges a NJ CEPA retaliation claim. *First*, contrary to Defendant's arguments, Plaintiff adequately alleges that she reasonably believed that Defendant's conduct was violative of the law. (*See* Am. Compl. ¶¶ 43-46 (explaining that Plaintiff believed Taylor violated the New Jersey Trade Secrets Act (the "NJTSA") and the Defend Trade Secrets Act (the "DTSA") by "improperly using confidential information and documents belonging to Merck" including "Merck's Privacy Rulebook, Privacy Functional Deployment Standards, [and] other associated policies and standards . . . which included . . . proprietary information belonging to Merck"; and that Taylor told Plaintiff "that he had 'the whole Privacy Rulebook' from Merck" which Plaintiff "did not believe he should have"), 49-50 (explaining that Farraro "has repeatedly 'converted' several Merck documents to [Defendant's] branding[,]" and that he "instructed other employees to just 'change' those Merck references to [Defendant] . . . implicat[ing Defendant] in

14

violating several intellectual property laws" and that Taylor and Farraro's "conduct runs afoul of the law").) These facts sufficiently allege that Plaintiff reasonably believed that Taylor and Farraro's conduct violated the NJTSA and the DTSA. *See Gomez Noriega v. City of Jersey City*, No. 24-10599, 2025 WL 2701755, at *2 (D.N.J. Sep. 23, 2025) ("Pleading a reasonable belief that an employer's conduct constituted a violation is sufficient to survive a motion to dismiss."); *Levins v. Braccia*, No. A-4290-7T2, 2009 WL 1658610, at *4 (N.J. Super. Ct. App. Div. June 16, 2009) (explaining that "the plaintiff need not show that her employer 'actually violated the law'" because "[a]ll that is required to satisfy this prong is that the plaintiff show that she 'reasonably believes' that her employer's conduct was violating the law" (internal citations omitted)); *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635, 639 (D.N.J. 2013) (same); *Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *5 (D.N.J. Jan. 11, 2017) ("A plaintiff alleging a CEPA violation need not prove that law or public policy was actually contravened[.]").

*Second*, Plaintiff adequately alleges that she performed "whistle-blowing" activity by filing a report with HR. (Am. Compl. ¶¶ 52, 55-56); *see* N.J. Stat. Ann. 34:19-3(a)(1), (c)(1). To satisfy the second prong, Plaintiff must allege that she engaged in a whistle-blowing activity which is defined as an objection to, or refusal "to participate in any activity, policy or practice which the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J. Stat. Ann. § 34:19-3(c). Here, Plaintiff specifically alleges that she "filed an official report" with HR reporting her concerns that Taylor and Farraro "had brought proprietary documents from their previous employer, which she . . . believed contained intellectual property belonging to that company." (Am. Compl. ¶ 52); *see Rickerson v. Pinnacle Foods Inc.*, No. 17-4469, 2017 WL 6034147, at *3 (D.N.J. Dec. 6, 2017) (finding that plaintiff adequately alleged

15

the second prong where his complaint alleged that he "reported what he believed to be unethical or illegal conduct . . . to [the defendant's] Chief Ethics Officer").

*Third*, Plaintiff adequately alleges that she suffered an adverse employment action—namely, pretextual performance feedback, reducing her annual bonus by fifty percent, constructive discharge, and termination of her employment. (Am. Compl. ¶¶ 58, 62, 64, 68, 96); *see, e.g.*, *Rickerson*, 2017 WL 6034147, at *3 ("[T]ermination is an adverse employment action.").

*Fourth*, Plaintiff adequately alleges that there was a causal connection between the whistle-blowing activity and her termination. (Am. Compl. ¶¶ 44-68, 94-96.) In determining whether a causal connection exists, Plaintiff must allege some facts "such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Bowles v. City of Camden*, 993 F. Supp. 255, 264, 265 (D.N.J. 1998). The evidence of a causal connection may be circumstantial. *See Maimone v. City of Atl. City*, 903 A.2d 1055, 1064-65 (2006). Here, Plaintiff alleges that she spoke to someone in HR on May 14, 2024, then filed a report on May 17, 2024. (Am. Compl. ¶ 52.) Plaintiff further alleges that on June 26, 2024, she had a performance review with Taylor and Watson where she received a "pretextual negative performance review," was informed that her position would be eliminated, and that "there was no place for [Plaintiff] at the [c]ompany." (*Id.* ¶¶ 58, 62.) While she was not officially terminated until December 27, 2024, the temporal proximity between the allegations that Plaintiff was informed "unequivocally" that her "role would be eliminated" on June 26, 2024, just over a month after she filed her complaint, is enough to allege a causal connection at the pleading stage. (*Id.* ¶¶ 57, 62, 64); *Rickerson*, 2017 WL 6034147, at *3 (finding that three months between plaintiff's complaint and his termination was enough to show a causal connection at the pleading stage); *Hilburn v. Bayonne Parking Auth.*, No. 07-5211, 2009 WL 235629, at *8 (D.N.J. Jan. 30,

16

2009) ("[C]onsidering the temporal proximity between [d]efendants' alleged retaliatory conduct and [p]laintiffs' whistle-blowing activities, it appears that, at least at this stage, [p]laintiffs have properly established a causal connection[.]"); *Leverett v. Williams-Sonoma Direct, Inc.*, No. 23-2405, 2023 WL 9039568, at *4 (D.N.J. Dec. 30, 2023) (finding that plaintiff sufficiently alleged a causal connection because of, among other things, the temporal proximity of the whistle-blowing activity and plaintiff's termination).

Moreover, because "CEPA is remedial legislation [it] must . . . be construed liberally in employees' favor." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 240 (3d Cir. 2016). Plaintiff, accordingly, sufficiently alleges that Defendant retaliated against her in violation of NJ CEPA. *Chun v. Sushi Maru Express Corp.*, No. 17-6411, 2018 WL 3158815, at *4-5 (D.N.J. June 28, 2018) (finding plaintiff sufficiently alleged a CEPA claim for retaliation when the complaint stated in part that plaintiff reasonably believed that defendants violated regulations and laws, plaintiff voiced her concerns to defendants, and defendants terminated plaintiff because of plaintiff's whistle-blowing activity); *Brown v. City of Long Branch*, 380 F. App'x 235, 239 (3d Cir. 2010) (finding plaintiff sufficiently alleged a CEPA claim for retaliation when the complaint stated in part that plaintiff believed defendant violated his right to medical privacy, plaintiff complained to a supervisor, and defendant terminated plaintiff only once he began to complain). The Court therefore denies Defendant's Motion to Dismiss Plaintiff's Sixth Claim for Relief.

### 2. *Pierce Doctrine – Whistleblower Retaliation (Seventh Claim for Relief)*

The New Jersey Supreme Court has held that an employee has a common law claim for wrongful discharge, "when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharma. Corp.*, 417 A.2d 505, 512 (N.J. 1980). New Jersey has since recognized "*Pierce*

claims" for discrimination, whistleblowing, and retaliation. *See Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-4564, 2011 WL 4594654, at *8 (D.N.J. Sep. 30, 2011). "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Id.* (citation omitted). Critically though, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that *Pierce* requires." *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 19-20 (N.J. 1992). A plaintiff must "prove not only that he or she complained about [an employer's] policy, but that his or her resulting discharge violated a clear mandate of public policy." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1184 (N.J. 2008). As such, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss[.]" *Pierce*, 417 A.2d at 513.

Here, Plaintiff fails to sufficiently allege that *any* public policy was affected. (*See generally* Am. Compl.) While Plaintiff has alleged that Defendant's conduct may have violated certain intellectual property rights of Merck, that is insufficient because Defendant's potential misappropriation of Merck's trade secrets is not a "violation of a clear mandate of public policy," and Plaintiff fails to plead any factual allegations to support her conclusory statement that such actions "were clearly contrary to a mandate of public policy[.]" (*See* Am. Compl. ¶ 102); *Pierce*, 417 A.2d at 512; *Tucker v. United Parcel Serv.*, No. 12-1024, 2013 WL 5406651, at *4 (D.N.J. Sep. 25, 2013) (granting defendants' motion to dismiss where, among other things, plaintiff failed to "provide any facts to explain precisely how [d]efendants violated public policy" and noting that "[i]f an employee does not point to a clear expression of public policy the court can grant a motion to dismiss" (second quote quoting *Bell v. K.A. Indus. Servs., LLC.*, 567 F. Supp. 2d. 701, 709 n.12 (D.N.J. 2008)); *Lee v. ElectrifAi, LLC*, No. 23-2239, 2024 WL 4182541, at *7 (D.N.J. Sep. 13,

18

2024) ("As [p]laintiff fails to allege any public policy that [d]efendants purportedly violated, the Court will dismiss her *Pierce* claim.").

Because Plaintiff has failed to allege any public policy that Defendant violated, the Court grants Defendant's Motion to Dismiss as to Plaintiff's Seventh Claim for Relief.

### C.     Defendant's Motion for Sanctions

Rule 11 imposes an affirmative duty on parties to conduct a reasonable inquiry into the factual and legal basis of claims before filing them with the court. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). It provides, in relevant part, as follows:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

19

Although Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims, "sanctions are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Paris v. Pennsauken Sch. Dist.*, No. 12-7355, 2013 WL 4047638, at *6 (D.N.J. Aug. 9, 2013) (quoting *Goldenberg v. Indel, Inc.*, No. 09-5202, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011)). Indeed, the Third Circuit has recognized that sanctions should be imposed only in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[] of the legal system." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

Based on what is before the Court, including the fact that the Court denied the majority of Defendant's Motion to Dismiss, the Court does not find that the claims brought by Plaintiff are so frivolous as to merit sanctions as an abuse of the legal system. *See Hisey v. QualTek USA, LLC*, No. 18-5129, 2019 WL 3936555, at *18 (E.D. Pa. Aug. 20, 2019) (declining to impose sanctions because plaintiff's claims were "not frivolous"). This case, accordingly, does not rise to the exceptional level where sanctions are warranted, and the Court therefore denies Defendant's Motion for Sanctions.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is granted in part and denied in part. Defendant's Motion for Sanctions is denied. The Court will issue an Order consistent with this Memorandum Opinion.

*s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: JANUARY 15, 2026